**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**BONNIE L. BUCHANAN**                                    **CIVIL ACTION**

**VERSUS**                                                **NO. 08-3618**

**MICHAEL J. ASTRUE, COMMISSIONER**                       **SECTION "A" (3)**
**SOCIAL SECURITY ADMINISTRATION**

**REPORT AND RECOMMENDATION**

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of

the Commissioner denying her application for a period of disability and disability insurance benefits

under Title II of the Social Security Act ("SSA") and her application for supplemental security

income ("SSI") payments under Title XVI of the SSA.   The matter has been fully briefed on cross-

motions for summary judgment and is ripe for review. For the following reasons, IT IS

RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's

cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

**I.      Factual and Procedural Background**

On April 10, 2003, the treating physician at Earl K. Long Medical Center treated plaintiff

and diagnosed her as suffering from right hip pain.  (Adm. Rec. at 439).  The treating physician also

noted that plaintiff had recently been diagnosed with sacroiliac arthritis.  (*Id.*).  On August 5, 2003,

a different treating physician at the Earl K. Long Medical Center treated plaintiff, ultimately noting

that plaintiff experienced lower back pain and tenderness around the S1 joint. (*Id.* at 438).

In August and September 2003, Dr. Olga Correa treated plaintiff several times. On August 25, Dr. Correa assessed plaintiff with severe lower back pain that radiated to her right hip. (*Id.* at 393). On August 27, 2003, radiologist Dr. Lawrence Glorioso conducted an MR Examination of the lumbar spine. (*Id.* at 408). The MR Examination revealed "an extradural defect noted contiguous with the narrowed and desiccated L5-S1 invertebral disc eccentric toward the right side." (*Id.*).

On August 29, Dr. Correa again treated plaintiff, noting that she had a protruding disc at the L5-S1 level. (*Id.* at 392). That same date, Dr. Correa noted that plaintiff felt better but that the pain pills made her nauseous. (*Id.*). Dr. Correa also noted the protruded L4/L5 disc on September 17, 2003, but also stated that plaintiff reported that she was "doing well." (*Id.* at 389). The next day, Dr. Correa administered several trigger point injections to plaintiff and noted that she tolerated the procedure well. (*Id.* at 386). Dr. Correa assessed plaintiff as suffering from muscle spasms as well as lumbar disc disease. (*Id.*). Approximately one week later, Dr. Correa followed up with plaintiff, at which time the doctor noted that plaintiff experienced lumbar pain radiating into her hips bilaterally in addition to the protruding disc at the L4/L5 level. (*Id.* at 385). Dr. Correa issued similar reports on October 20 and November 6, 2003. (*Id.* at 375, 380).

Between October 6 and 22, 2003, plaintiff visited the Earl K. Long Medical Center six times where she was treated by the treating physician. (*Id.* at 201-06). Plaintiff reported lumbar spine pain and rated her pain at between moderate and severe on several occasions. (*Id.*). The treating

physician noted that plaintiff suffered right and left sacroiliac tenderness to palpation at the L3-S1[1] disc level as well as a decreased range of motion in her lumbar spine. (*Id.* at 206). On several of the visits, the treating physician performed a chiropractic adjustment to the cervical spine, the thoracic spine and the lumbar spine. (*Id.*). The treating physician at Earl K. Long Medical Center issued a similar report on October 31, 2003. (*Id.* at 195).

Dr. Leo Nickel of the American Back Institute treated plaintiff on November 21, 2003. He noted that plaintiff experienced numbness in her left leg and foot. (*Id.* at 263). He also noted that plaintiff felt as if the lumbar decompression was helping as she was able to walk with more ease and sit up longer than before. (*Id.*). She rated her improvement at 30 percent better in both her lower back and her "sciatic." (*Id.*). Dr. Nickel treated plaintiff again on December 12, 2003, when he noted that plaintiff was experiencing numbness in her left leg and a burning sensation in her right hip. (*Id.* at 248). Dr. Nickel prescribed Celebrex to her. (*Id.*).

On February 25, 2004, plaintiff presented at Earl K. Long Medical Center, where the treating physician noted that she complained of pain in the lumbar spine, largely confined to the right paraspinous musculature. (*Id.* at 437). The treating physician also noted that plaintiff had a disc herniation at the L5-S1 level. (*Id.*).

On March 19, 2004, Dr. John Logan reported that plaintiff was experiencing a burning sensation in her right thigh and hip and a numbness in her legs. (*Id.* at 184). Plaintiff saw Dr. Logan on that date to discuss surgery. (*Id.*). Dr. Logan noted that plaintiff requested Lortab and Soma and either received at that visit – or was then taking – Soma, Lortab and Vioxx. (*Id.*).

---

[1] Given that all other reports reference the L5-S1 disc, this reference is probably a typo.

In early May 2004, plaintiff underwent Intradiscal Electrothermal Therapy ("IDET"). Dr. Logan treated plaintiff approximately two weeks after the IDET procedure on May 19, 2004. At that time, plaintiff complained of numbness in both lower extremities, swelling in both ankles and muscle spasms in her back. (*Id.* at 467). A little more than a month later, Dr. Logan again treated plaintiff, this time noting that she complained that sitting was very uncomfortable. (*Id.* at 464). Dr. Logan also noted that her pain was exacerbated with activity. (*Id.*).

Plaintiff again presented to Dr. Logan on August 17, 2004. On that date, he noted that when plaintiff increased her activity, her pain increased. (*Id.* at 461). Plaintiff also reported increased pain when sitting and that the pain was worse in the mornings. (*Id.*). When plaintiff raised her leg straight, she reported lower back spasms. (*Id.* at 462).

Dr. Logan also treated plaintiff on October 8, 2004, when plaintiff complained of lower back pain and continuous pain on prolonged sitting. (*Id.* at 460). Dr. Logan also noted that plaintiff was "doing well" and ordered "activities as tolerated." (*Id.*). Dr. Logan noted that plaintiff suffered from degenerative disc disease on January 19, 2005. (*Id.* at 458). On April 11 of that same year, plaintiff complained to Dr. Logan of pain in her lower back, with the impression that something was moving around in her back that caused the pain. (*Id.* at 457). Again, Dr. Logan diagnosed degenerative disc disease of the lumbar spine. (*Id.*).

On February 4, 2004, plaintiff filed a Title II application for a period of disability and disability insurance benefits. She also filed a Title XVI application for supplemental security income on that same date. In both applications, plaintiff alleged disability as of April 1, 2003. Both claims were initially denied on April 5, 2004. Plaintiff timely filed a request for a hearing on May

25, 2004, and the Administrative Law Judge ("ALJ") held a video hearing on July 28, 2006. Plaintiff appeared in New Orleans, Louisiana, and the ALJ appeared in Albuquerque, New Mexico. Daniel V. Moriarty, an impartial vocational expert, also appeared at the hearing.

Before the video hearing, Dr. Stephen Wilson performed a consultative examination on plaintiff on October 11, 2005. (*Id.* at 448-49). Dr. Wilson noted tenderness to minimal palpation of the lower back and that plaintiff complained of pain while performing heel and toe walking and on forward flexion at 60 degrees. (*Id.* at 448). He also found that the "patient's symptomatology [wa]s exaggerated." (*Id.*). Dr. Wilson's orthopedic and neurological examination of the lower extremities revealed no evidence of muscle atrophy or muscle weakness, no palpable muscle spasm, no gross joint deformity and no subjective or objective numbness. (*Id.* at 449). Dr. Wilson noted that plaintiff had good dorsiflexion of the feet and toes bilaterally and that she had a positive straight leg raising test on the right at 70 degrees. (*Id.*). Dr. Wilson repeated, "Her symptoms, again, are very exaggerated and hard to relate to any definite diagnosis." (*Id.*). X-rays taken by Dr. Wilson of the lumbosacral spine and pelvis revealed no evidence of any type of fracture or dislocation. (*Id.*). Dr. Wilson, after reviewing an MRI that plaintiff had brought with her, noted that she had a L5-S1 disc protrusion more to the right than to the left. (*Id.*).

Dr. Wilson's ultimate impression was that he saw no reason at that time why plaintiff could not return to some form of gainful occupation. (*Id.*). He opined that she could return to an occupation where she did not lift more than 40 pounds or more than 20 pounds on a regular basis. (*Id.*). He stated that she could return to a job that required only occasional bending, stooping, crawling or climbing. (*Id.*). After opining that plaintiff could benefit from surgery, Dr. Wilson also

admitted that her symptomatology could increase – rather than decrease – as a result of the operation. (*Id.*). Dr. Wilson stated, "It is somewhat questionable if this patient is motivated to return to work at this time. She needs to stop her excessive taking of medication and she needs to be on an exercise program for her stomach and back musculature." (*Id.*).

On September 22, 2006, the ALJ issued a decision denying plaintiff's claims. The ALJ found that plaintiff has the residual functional capacity to perform a full range of sedentary work. (*Id.* at 72). The ALJ also found that the plaintiff is capable of performing past relevant work as a mortgage loan officer, administrative assistant or a marketing director. (*Id.* at 73). The ALJ determined that plaintiff's past relevant work did not require the performance of work-related activities that were precluded by her residual functional capacity, and – ultimately – that she was not disabled under 20 C.F.R. §§ 404.1520(f) and 416.920(f). (*Id.* at 74). This appeal followed.

## II.    Standard of Review

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson*

*v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002).   It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision.  *See Boyd v. Apfel*, 239 F.3d  698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence or substitute its own judgment for that of the Commissioner.  *Carey v. Apfel,* 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. (1992).  Conflicts in the evidence are for the Commissioner to resolve, not the courts.  *Carey,* 230 F.3d at 135.  Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive.  *Ripley*, 67 F.3d at 555.  Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it.   *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992);  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

## III.    Entitlement to Benefits under the Act

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant, such as the plaintiff, is considered disabled only if her

physical or mental impairment is so severe that she is unable to do not only her previous work, but cannot, considering her age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which she lives, whether a specific job vacancy exists or whether she would be hired if she applied for work.  42 U.S.C. § 1382(a)(3)(B).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901 t - 416.988 (1995).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  *Id.* §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir.2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is

capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 239 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194 (5th Cir.1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test – as he did here – the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make his disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

## IV.    ISSUES ON APPEAL

Plaintiff raises five issues on appeal that this Court will address in turn:

(1)    Whether the ALJ properly evaluated the opinions of treating physician Dr. Logan and chiropractor Robert Lizana and accorded the opinions proper weight.

(2)    Whether the ALJ committed error when he failed to re-contact Dr. Logan and Lizana before he rejected their findings.

(3)    Whether the ALJ committed error when he did not request a consultative examination from plaintiff's treating physician, Dr. Logan.

(4)    Whether the Appeals Council committed error when it failed to provide plaintiff with information relative to the consultative examination on which the ALJ relied.

(5)     Whether the ALJ properly assessed plaintiff's credibility and discounted it for legally sufficient reasons, or, as plaintiff frames the issue, whether the ALJ committed error when he failed to discuss the issue of pain and other symptoms.

## V. ANALYSIS

**1.     Whether the ALJ properly evaluated the opinions of treating physician Dr. Logan and chiropractor Robert Lizana and accorded the opinions proper weight.**

The ALJ must follow the guidelines set forth in Social Security Report ("SSR") 96-2p to determine whether "controlling weight" should be given the medical opinions of a "treating source." These guidelines are that: (1) the opinion must come from a "treating source"; (2) the opinion must be a "medical opinion"; (3) the treating source's medical opinion must be "well supported" by "medically acceptable" clinical and laboratory techniques; and (4) even if supported, the opinion must not be inconsistent with other substantial evidence. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citing *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)). Even if the ALJ finds that the treating source's medical opinion is not entitled to controlling weight, that does not mean that the opinion can be rejected. "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." SSR 92-2p.

The factors provided in 20 C.F.R. §§ 404.1527 and 416.927 include: (1) examining relationship; (2) treatment relationship, length of treatment, frequency of examination, nature and extent of relationship; (3) supportability; (4) consistency; and (5) specialization. "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical,

laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Shave v. Apfel,* 238 F.3d 592, 595 (5th Cir. 2001); *Newton*, 209 F.3d at 456. Medical opinions of a specialist are generally accorded more weight than opinions of a source not a specialist. *Moore* v. *Sullivan,* 919 F.2d 901, 904 (5th Cir. 1990). However, specialization is only one of several factors considered in the evaluation of medical opinions. In summary, the Commissioner has considerable discretion in assigning weight to medical opinions and is free to reject the opinion of any physician when substantial evidence supports a contrary conclusion. *Martinez*, 64 F.3d at 176; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Moore,* 919 F.2d at 905. Indeed, even when a court should afford considerable weight to a treating physician's diagnosis, the "ALJ has sole responsibility for determining a claimant's disability status." *Newton*, 209 F.3d at 455 (citing *Greenspan*, 38 F.3d at 237).

Plaintiff argues that the ALJ erred when he relied on the opinion of the consultative physician, Dr. Wilson, and not the opinion of her treating physician, Dr. Logan, or her chiropractor, Lizana. Plaintiff notes that Dr. Logan treated plaintiff over a period of two months and that Dr. Wilson saw her only once. Plaintiff asserts that the ALJ failed to explain why he discounted Dr. Logan's opinion for that of Dr. Wilson. Plaintiff maintains that the ALJ failed to consider the factors in Sections 404.1527 and 416.927 except to find that the opinion of Dr. Logan was inconsistent with the record as a whole. According to plaintiff, the only inconsistency in the record is between the opinions of Drs. Logan and Wilson. Therefore, plaintiff argues, the ALJ found the opinion of Dr. Logan inconsistent with the record as a whole simply because it was inconsistent with the opinion of Dr. Wilson.

While it is well-settled law that the opinions of a claimant's treating physician are entitled to great weight, the ALJ may decrease reliance on a treating physician's opinion for good cause. *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). Good cause for decreasing reliance on the opinion of a treating physician includes "'disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence.'" *Id.* (quoting *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)) (alteration in original).

The primary fallacy in plaintiff's argument is her reliance on Dr. Logan's medical opinions rendered *before* her May 2004 IDET procedure and his opinion immediately *after* the May 2004 IDET procedure, in which he admitted that he had not treated or examined her since before the surgery. (Indeed, in the medical assessment that he provided, Dr. Logan emphasized that his opinions were based on plaintiff's assessment before the IDET procedure by underlining "prior to her surgery on May 5, 2004" four times. (Adm. Rec. at 182-83).) The ALJ found:

> Dr. Logan, the claimant's treating orthopedic surgeon, also prepared a medical source statement on May 20, 2004. . . . Dr. Logan also found that prior to the procedure, the claimant could not lift or carry 20 pounds while standing/walking up to two hours of an eight-hour workday, could not stand or walk for six hours in an eight-hour day, could not lift or carry ten pounds while standing/walking up to two hours of an eight-hour workday, could not sit for six hours of an eight-hour workday and could not alternate standing and sitting for eight hours without walking about or reclining. *Dr. Logan noted that the claimant had not been examined due to pain and that he could not comment on her ability to do work-related activities, although the form was completed. (Exhibit 1F/4) Both of the opinions were rendered immediately after the IDET procedure for the period prior to the procedure and did not address the pain relief/symptom improvement experienced by the claimant.*

(*Id.* at 73) (emphasis added). Indeed, plaintiff herself reported that she experienced less pain after

the IDET procedure. (*Id.* at 165). After the IDET procedure, Dr. Logan's reports even noted improvement. On May 19, 2004, Dr. Logan reported that plaintiff experienced lumbar tenderness and muscle spasms but that she did not have radiculopathy down to her legs. (*Id.* at 467). Dr. Logan also reported a reduced pain level (three or four out of ten) and that plaintiff was improving since having started aqua therapy. (*Id.* at 71, 464). On October 8, 2004, Dr. Logan reported that plaintiff was doing well, that she was much improved and that she could perform activities as tolerated. (*Id.* at 460).

As noted above, Dr. Wilson, the consultative physician, examined plaintiff on October 11, 2005. Dr. Wilson noted tenderness to minimal palpation in plaintiff's lower back, that she complained of pain in her heel-to-toe walking and that she complained of pain on forward flexion at 60 degrees. (*Id.* at 448). Dr. Wilson reported that plaintiff's symptomology was "exaggerated" and that an orthopedic and neurological examination of her lower extremities revealed no evidence of muscle atrophy or muscle weakness, that she had no palpable muscle spasm and that she had no gross joint deformity. (*Id.* at 448-49). He noted that she had no subjective or objective numbness, that she had good strength on dorsiflexion of her feet and toes bilaterally and that her pulses were palpable and equal bilaterally. (*Id.* at 449). He reported that she had a positive straight leg raising test on the right at 70 degrees. (*Id.*) Again, he noted that her symptoms were "very exaggerated and hard to relate to any definite diagnosis." (*Id.*).

Dr. Wilson indicated that X-rays of plaintiff's lumbosacral spine and pelvis showed no evidence of fracture or dislocation, that her alignment was satisfactory and that there was only minimal degenerative disc disease at the L5-S1 level. (*Id.*). He noted that his review of an MRI

demonstrated a disc protrusion at the L5-S1 level, more to the right than the left. (*Id.*). Dr. Wilson stated that there was "no reason at this time that this patient could not return to some form of gainful occupation." (*Id.*). He opined that plaintiff "need[ed] to return to work" where she did not lift more than 40 pounds or more than 20 pounds on a regular basis, and that she could return to activities that required only occasional bending, stooping, crawling or climbing. (*Id.*) Lastly, Dr. Wilson stated: "It is somewhat questionable if this patient is motivated to return to work at this time. She needs to stop her excessive taking of medication and she needs to be on an exercise program for her stomach and back musculature." (*Id.*).

Moreover, a non-examining state agency physician provided a physical residual capacity assessment that is also inconsistent with Dr. Logan's medical source statement and opinions before plaintiff's IDET procedure. (*Id.* at 441-44). The physician noted that plaintiff could perform light work, could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and pull "unlimited, other than as shown for lift and/or carry." (*Id.* at 442). The assessment also revealed that plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl. (*Id.* at 443). The physician also reported that plaintiff had no communicative or environmental limitations. (*Id.* at 444).

The assessments of Dr. Wilson and the non-examining state agency physician are inconsistent with the opinions of Dr. Logan rendered before plaintiff's IDET procedure and Dr. Logan's medical assessment rendered immediately following the IDET procedure. Indeed, even Dr. Logan's opinions rendered after the IDET procedure revealed improvement on plaintiff's part.

Accordingly, Dr. Logan's opinions rendered before the IDET procedure are not supported by substantial evidence and are inconsistent with the record as a whole and the medical opinions rendered after the IDET procedure. The ALJ did not err in decreasing the weight that he placed on Dr. Logan's medical opinions.

The Court also finds that the ALJ accorded proper weight to the opinion of Lizana, plaintiff's chiropractor. A chiropractor's opinion may not be given additional weight under the treating source rule because chiropractors are not considered "acceptable medical sources" but only "other sources" on whom reliance is merely permissive. 20 C.F.R. §§ 404.1513(d)(1), 416.1913(d)(1). Opinions of a chiropractor "may" be used to "show the severity of an impairment and how it affects the ability to work. *Id.* While the ALJ perhaps gave short shrift to Lizana's medical source statement, the Court notes that – like Dr. Logan – Lizana emphasized that the medical source statement reflected his views on plaintiff's limitation *before* the IDET procedure. Accordingly, and for the same reasons as those listed above, the Court finds that the ALJ accorded the proper weight to Lizana's opinions. This argument has no merit.

**2. Whether the ALJ erred when he did not re-contact Dr. Logan before he rejected Dr. Logan's opinion.**

Plaintiff argues that the ALJ erred when he did not re-contact Dr. Logan before rejecting his opinion and ordering a consultative examination by Dr. Wilson. Citing 42 U.S.C. § 423(d)(5)(B) and its congressional history, plaintiff argues that the proper interpretation of the statute reveals that Congress wanted the ALJ to work with the treating physician when it is necessary to conduct further tests and scientific assessments of an individual's functional capabilities. Plaintiff asserts that

defendant's regulations – specifically 20 C.F.R. § 1512 – require the ALJ to re-contact the treating physician if there is conflict or ambiguity in the treating physician's opinion.  Plaintiff argues that under Sections 404.1512(e) and (f), a consultative examination shall be ordered only if it is still necessary after re-contacting the treating physician.  Plaintiff maintains that Social Security Ruling ("SSR") No. 85-16 and recent HALLEX rules in I-5-310 Attachment IV support her arguments.  Defendant disputes plaintiff's interpretation of the statute and the regulations, arguing that re-contacting the treating physician is not mandatory.

42 U.S.C. § 423(d)(5)(B) provides, in pertinent part:

> In making any determination the Commissioner of Social Security shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any other source on a consultative basis.

42 U.S.C. § 423(d)(5)(B).   From a plain reading of the statute, all that Section 423(d)(5) requires is that defendant make every reasonable effort to obtain from a claimant's treating physician all medical evidence to make its determination *before* it evaluates the opinion of a consultative physician.  There is no claim here that the ALJ did not have all medical evidence from Dr. Logan *before* he reviewed the results of Dr. Wilson's consultative examination.  Neither does Section 423(d)(5)(B) preclude reliance on consultative examinations.

Moreover, a reading of the relevant regulations reveals no imposition of a mandatory duty on the ALJ to re-contact a treating physician before he rejects – or decreases reliance on – that physician's opinion.   Section 404.1512(e) provides that when the evidence that the ALJ receives is inadequate to determine whether a claimant is disabled, the ALJ will first contact the treating

physician to obtain additional information as needed. 20 C.F.R. § 404.1512(e)(1)-(2). Here, the ALJ did not find that the record was inadequate. There was sufficient evidence in the record to determine that plaintiff was not disabled and, thus, no need to re-contact Dr. Logan. The ALJ determined that the evidence submitted by Dr. Logan, the other treating, examining and consultative physicians and the non-examining physicians was sufficient to determine that plaintiff was not disabled.

Moreover, even had the ALJ erred here, any procedural error would be harmless given that plaintiff was given the opportunity to supplement her record with additional medical reports from her treating physician. In *Fink v. Barnhart*, the plaintiffs argued that the ALJ erred when he failed to re-contact the plaintiff's treating physician before ordering a consultative examination and when he failed to appoint a treating physician to perform the consultative examination. 123 Fed. Appx. 146, 147 (5th Cir. 2005) (unpublished disposition). Citing *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988), the Fifth Circuit rejected the arguments, noting that any procedural error was harmless given the opportunity afforded to plaintiffs to supplement their records with reports from their own treating physicians. 123 Fed. Appx. at 148. Accordingly, even had the ALJ erred here, such error would be harmless. This argument must fail.

### 3. Whether the ALJ committed error when he did not request a consultative examination from plaintiff's treating physician, Dr. Logan.

Plaintiff also argues that the ALJ erred when he failed to request a consultative examination from Dr. Logan. Plaintiff argues that 42 U.S.C. § 423(d)(5)(B) and 20 C.F.R. §§ 404.1512(f) and 416.1519(h) require the ALJ to request that a claimant's treating physician perform the consultative

examination. For the following reasons, plaintiff's argument fails.

As noted above, all that Section 423(d)(5) requires is that the ALJ make every reasonable effort to obtain from a claimant's treating physician all medical evidence to make its determination *before* it evaluates the opinion of a consultative physician. There is no claim here that the ALJ did not obtain all medical evidence from Dr. Logan before he evaluated Dr. Wilson's medical opinion.

Section 404.1512(f) provides that

> *Generally*, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources.
> . . .
> We will not evaluate this evidence until we have made every reasonable effort to obtain evidence from your medical sources.

20 C.F.R. § 404.1512(f) (emphasis added). The language of Section 404.1512(f) mirrors that in 42 U.S.C. § 423(d)(5), and plaintiff's argument fails for those reasons noted above. In addition, Section 404.1519(h) provides:

> When *in our judgment*, your treating source is qualified, equipped, and willing to perform the additional examination or tests for the fee schedule payment, and generally furnishes complete and timely reports, your treating source will be the preferred source to do the purchased examination. Even if only a supplemental test is required, your treating source is *ordinarily* the preferred source.

20 C.F.R. § 404.1519(h) (emphasis added). Nothing in the unambiguous language of either of these regulations requires that the treating physician perform the consultative examination. Terms like "generally," "ordinarily" and "in our judgment" limit the regulations' reach and provide that such procedures are neither mandatory nor ordered in every single case. While a consultative examination by a treating physician may be the "preferred" option in some cases, it is not required under a plain reading of the statute and regulations.

18

Moreover, even had the ALJ erred here, such error would be harmless. *Fink*, 123 Fed. Appx. at 148. For these reasons, the Court rejects plaintiff's argument.

4.      **Whether the Appeals Council committed error when it allegedly failed to provide plaintiff with information relative to the consultative examination on which the ALJ relied.**

On October 4, 2006, plaintiff sent a letter to the Appeals Council in which she asked the council to turn over "a copy of any and all evidence of attempts by the Social Security Administration to have consultative examinations performed by treating physicians." (Adm. Rec. at 63). Specifically, plaintiff sought (1) copies of the request to the consultative examiner; (2) identification of medical records submitted to the consultative examiner; and (3) copies of any other materials sent to the consulting examiner. (*Id.*). Defendant did not respond to plaintiff's request. Plaintiff now argues that the failure to respond was error because without the information, she can not determine what defendant provided to Dr. Wilson nor whether defendant gave him any improper instructions.

The Court finds that plaintiff has not met her burden here. The Fifth Circuit has often held that it "will not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges." *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996) (citing *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)). To establish prejudice, plaintiff must show that she "'could and would have adduced evidence that might have altered the result.'" *Id.* Plaintiff points to no evidence that would have been adduced at the hearing that would have changed the result had she received the information that she requested *after* the hearing. Accordingly, this argument has no merit.

5.     **Whether the ALJ properly assessed plaintiff's credibility and discounted it for legally sufficient reasons, or, as plaintiff frames the issue, whether the ALJ committed error when he failed to discuss the issue of pain and other symptoms.**

Plaintiff also challenges the ALJ's finding as to the credibility of plaintiff's complaints about the severity of her pain. It is well settled that the ALJ must consider subjective evidence of pain, but it is within the discretion of the ALJ to determine the pain's disabling nature. *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991) (citing *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981) & *Jones v. Heckler*, 702 F.2d 616, 621-22 (5th Cir. 1983)). The ALJ's determination is entitled to considerable deference. *Id.* (citing *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986)). "Disabling pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment." *Id.* (citing *Haywood v. Sullivan*, 888 F.2d 1463, 1470 (5th Cir. 1989)).

SSR 96-7p, entitled "Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements," outlines the determination of a claimant's credibility.[2] "[A]n individual's statement(s) about his or her symptoms is not enough in itself to establish the existence of a physical or mental impairment or that the individual is disabled." SSR 96-7p, 1996 WL 374186, at *2. To evaluate an individual's credibility, the adjudicator must first determine whether the claimant has an impairment that could cause the alleged symptoms, and such impairment must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *Id.* Second, if the claimant's statements about "the intensity, persistence, or functionally limiting effects of pain or other symptoms" are not

---

[2]     The Fifth Circuit has noted that while they are not binding, SSRs "may be consulted when the statute at issue provides little guidance," and that the court itself has "frequently relied upon the rulings in evaluating ALJs' decisions." *Myers*, 238 F.3d at 620.

substantiated by objective medical evidence, "the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.* The Fifth Circuit has held that the ALJ need not give subjective evidence precedence over medical evidence but that "a resolution of conflicts between the subjective evidence and the medical evidence should depend upon the ALJ's evaluation of the credibility of the claimant's complaints of pain." *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988).

Relying on *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985), plaintiff argues that the ALJ must give specific reasons for a credibility finding. Plaintiff notes that evidence of the severity and persistence of her pain is present throughout the record, in the form of her own statements and those of her treating physicians. This argument lacks merit.

The ALJ specifically found:

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

As noted above, the consulting orthopedic surgeon, Dr. Wilson, characterized the claimant's degenerative disc disease as 'mild.' Dr. Wilson also noted that the clamant [sic] was 'deconditioned,' as did her treating surgeon, Dr. Logan. Dr. Wilson also noted a normal physical exam (range of motion, intact sensation and intact strength) except for a positive straight-leg raising test which he attributed to symptom exaggeration. The claimant has degenerative disk disease of L5-S1 which has been treated conservatively and with IDET. Both Dr. Wilson and Dr. Logan noted that the claimant might benefit from a diskectomy procedure. The claimant has considered having surgery but has not yet done so. Dr. Wilson also found that there was symptom magnification and "excessive taking of medication." [sic] that the claimant's pain level was disproportionate to the organic findings. Pain is, of course, entirely subjective but the claimant's pain level seems to be disproportionate to the organic findings.

(Adm. Rec. at 72). Contrary to plaintiff's claim, the ALJ provided more than a conclusory statement as to plaintiff's credibility and the severity and persistence of her pain. Indeed, the ALJ compared plaintiff's statements as to her pain to the opinions of both her treating physician, Dr. Logan, and the consultative physician, Dr. Wilson, and to the organic findings in the record.

The ALJ fulfilled his duties under Fifth Circuit law and did not incorrectly analyze plaintiff's credibility. Here, the ALJ pointed to the conflict between the descriptions of plaintiff's physical symptoms and the descriptions contained in her medical records. *See Hollis*, 837 F.2d at 1385. Plaintiff asks this Court to re-weigh the evidence and reject the ALJ's findings, but such an exercise on judicial review is entirely inappropriate. "The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983) (citing *Laffoon v. Califano*, 558 F.2d 253, 255 (5th Cir. 1977)). The ALJ is the proper fact-finder to assess a claimant's credibility since he "enjoys the benefit of perceiving first-hand the ALJ's claimant at the hearing." *Falco v. Shalala*, 27 F.3d 160, 164 n.18 (5th Cir. 1994) ("We do not sit in *de novo* review nor may we re-weigh the evidence."). The choice that the ALJ made here – to credit plaintiff's medical records and not her subjective complaints – is supported by substantial evidence, and this Court may therefore not overturn it.

## VI. CONCLUSION

Plaintiff has failed to show that the ALJ's Residual Functional Capacity assessment is not supported by substantial evidence and that the ALJ erred in the proceeding below. Substantial evidence supports the ALJ's finding that plaintiff was not disabled within the meaning of the Social

Security Act at any time through the date of the determination. Accordingly,

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's Cross-Motion be GRANTED and that plaintiff's complaint be dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) & 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this  1st  day of December, 2009.

DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE